1  Anna Y. Park, CA SBN 164242
   Nakkisa Akhavan, CA SBN 286260
2  U.S. EQUAL EMPLOYMENT
   OPPORTUNITY COMMISSION
3  255 East Temple Street, Fourth Floor
   Los Angeles, CA 90012
4  Telephone:  (213) 785-3083
   Facsimile:  (213) 894-1301
5  E-Mail:  lado.legal@eeoc.gov
6
7  Attorneys for Plaintiff
   U. S. EQUAL EMPLOYMENT
8  OPPORTUNITY COMMISSION
9

# IN THE DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

| | |
|---|---|
| U. S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | **CASE NO:** 1:25-cv-00004 |
| Plaintiff, | |
| vs. | **[PROPOSED] CONSENT DECREE; ORDER** |
| LEOPALACE GUAM CORPORATION DBA LEOPALACE RESORT, Does 1-5 Inclusive, | THE HON. ~~Frances Tydingco-Gatewood~~ Ramona V. Manglona UNITED STATES DISTRICT JUDGE |
| Defendant(s). | |

## I.

## INTRODUCTION

Plaintiff U.S. Equal Employment Opportunity Commission (the "EEOC" or "Plaintiff") and Defendant Leopalace Guam Corporation dba Leopalace Resort ("Leopalace" or "Defendant") (Plaintiff and Leopalace collectively, the "Parties") hereby stipulate and agree to entry of this Consent Decree (the "Decree") to fully and finally resolve Plaintiff's complaint against Leopalace in U.S. Equal Employment Opportunity Commission v. Leopalace Guam Corporation dba Leopalace Resort and Does 1-5, Inclusive; Civil No. 1:25-cv-00004 (the "Action"). On February 14, 2025, Plaintiff filed this Action in the United States District Court, District of Guam, for violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). The Action alleges that Leopalace unlawfully discriminated against the Charging Parties, Christopher Adams, Thomas Lee and Donald Gueniot, Jr., and a class of non-Japanese employees (collectively, "Claimants") by subjecting them to less favorable wages and benefits, terms and conditions of employment compared to their equivalent or subordinate Japanese employees because of their national origin (non-Japanese). Leopalace contends that it could assert the rights of its parent under *Treaty & Protocol Between the United States of America & Japan*, T.I.A.S. No. 2863 (Oct. 30, 1953) ("Treaty") and therefore did not violate Title VII, and it denies all claims and allegations of discrimination and retaliation asserted by the EEOC on behalf of the Claimants, including that they received less favorable wages and benefits or terms and conditions of employment based on their national origin. The EEOC disagrees with Leopalace's position and maintains its longstanding position that Leopalace Guam Corporation, a US Corporation, cannot invoke the Treaty rights of its foreign parent corporation. This Decree shall in no event be construed as an admission of liability by Defendant Leopalace.

## II.

## PURPOSES AND SCOPE OF THE CONSENT DECREE

A. The Decree is made and entered into by and between the EEOC and Leopalace and shall be binding on and enforceable against Leopalace as well as its officers, directors, agents, successors and assigns. The scope of this Decree is companywide, unless otherwise noted. This

Decree does not, in any way, extend to Leoplace 21.

    B.  The Parties have entered into this Decree for the following purposes:

        1.  To conserve the Parties' litigation resources and to resolve this matter with finality;

        2.  To provide monetary and injunctive relief;

        3.  To ensure employment practices in compliance with federal law;

        4.  To ensure all wages, benefits, terms and conditions of employment are free from discrimination on the basis of national origin and to ensure a work environment free from retaliation;

        5.  To ensure effective policies and procedures and training are in compliance with anti-discrimination laws; and

        6.  To ensure appropriate record keeping, reporting, and monitoring.

    C.  This Decree, as described in further detail in Sections IX, X and XI below will be implemented by Leopalace.

## III.

## RELEASE OF CLAIMS

    A.  This Decree fully and completely resolves all issues, claims and allegations that were raised or could have been raised by the EEOC against Leopalace in this Action, including EEOC Charge Nos. 486-2017-00178, 486-2017-00169, 486-2018-00049, and 486-2017-00156. Payment from the Settlement Amount, as set forth below, shall be in compliance with Section VIII.

    B.  Nothing in this Decree shall be construed to limit or reduce Leopalace's obligation to comply fully with Title VII or any other federal employment statute.

    C.  Nothing in this Decree shall be construed to preclude the EEOC from bringing suit to enforce this Decree

    D.  This Decree in no way affects the EEOC's right to bring, process, investigate or litigate other charges that may be in existence or may later arise against Leopalace in accordance with standard EEOC procedures.

2

# IV.

## JURISDICTION

A.  The Court has jurisdiction over the Parties and the subject matter of this litigation.  The Action asserts claims that, if proven, would authorize the Court to grant the relief set forth in this Decree. The terms and provisions of this Decree are fair, reasonable and just. This Decree conforms with the Federal Rules of Civil Procedure and Title VII, and is not in derogation of the rights or privileges of any persons.

B.  The Court shall retain jurisdiction of this Action for the duration of the Decree for the purposes of entering all orders, judgments and decrees that may be necessary to implement the relief provided herein.

# V.

## EFFECTIVE DATE AND DURATION OF DECREE

A.  The provisions and agreements contained herein are effective immediately upon the date which this Decree is entered by the Court (the "Effective Date").

B.  Except as otherwise provided herein, this Decree shall remain in effect for three (3) years after the Effective Date.

C.  If the Defendant has been in full compliance with all terms and conditions of this Consent Decree for the first two (2) years following the Effective Date, the Consent Decree shall terminate upon the expiration of the two and a half-year period. Defendant's compliance shall be assessed by the Monitor, during the two-year period. Within thirty days of expiration of the second year of the consent decree, the Monitor will inform the EEOC of such compliance and recommend whether the Decree should sunset at the 2.5 year rather than the 3 year term. If the EEOC disputes the Monitor's assessment of the Defendant's compliance, such dispute must be raised in writing no later than fourteen (14) days upon notification by the Monitor or prior to the expiration of the two-year period. The EEOC shall have final approval on this sunset provision. In the event of a dispute, Defendant shall work with the Monitor to resolve such dispute and demonstrate compliance to the EEOC. If the EEOC does not dispute the early sunset of this Consent Decree, the Consent Decree will automatically terminate without any further notice

3

**VI.**

**MODIFICATION AND SEVERABILITY**

A.  This Decree constitutes the complete understanding of the Parties with respect to the matters contained herein. No waiver, modification or amendment of any provision of this Decree will be effective unless made in writing and signed by an authorized representative of each of the Parties.

B.  If one or more provisions of the Decree are rendered unlawful or unenforceable, the Parties shall make good faith efforts to agree upon appropriate amendments in order to effectuate the purposes of the Decree. In any event, the remaining provisions will remain in full force and effect unless the purposes of the Decree cannot, despite the Parties' best efforts, be achieved.

C.  By mutual agreement of the Parties, this Decree may be amended or modified in the interest of justice and fairness in order to effectuate the provisions herein.

**VII.**

**COMPLIANCE AND DISPUTE RESOLUTION**

A.  The Parties expressly agree that if the EEOC has reason to believe that Leopalace has failed to comply with any provision of this Consent Decree, the EEOC may bring an action before this Court to enforce the Decree. Prior to initiating such action, the EEOC will notify Leopalace and its legal counsel of record, in writing, of the nature of the dispute. This notice shall specify the particular provision(s) that the EEOC believes that Leopalace breached. Absent a showing by either party that the delay will cause irreparable harm, Leopalace shall have forty-five (45) days to attempt to resolve or cure any non-monetary breach. In the event of a monetary breach, the EEOC may petition this Court for resolution and seek all available relief without the need for the EEOC to first notify Leopalace of any monetary breach in writing or allow time for Leopalace to attempt to resolve or cure any monetary breach.

B.  After forty-five (45) days have passed with respect to any notices of a non-monetary breach, if the Parties have reached no resolution or agreement to extend the time further, the EEOC may petition this Court for resolution of the dispute, seeking all available relief, including an extension of the term of the Decree, the EEOC's costs incurred in securing compliance with the

4

Decree, and/or any other relief the Court deems appropriate.

## VIII.

## MONETARY RELIEF

A.  Leopalace will pay the total of the gross amount of $1,412,500.00 USD ("Settlement Amount"), to be distributed, at the sole discretion of the EEOC, to Charging Parties and any Eligible Claimant. The EEOC defines an Eligible Claimant as someone who was subjected to discrimination and/or retaliation on the basis of national origin in violation of Title VII by Leopalace. The EEOC has sole discretion to determine who is an Eligible Claimant and the characterization of the monetary relief. Within thirty (30) days of the Effective Date, Leopalace shall deposit the Settlement Amount into an interest-bearing account ("Settlement Fund Account") and provide the EEOC with written verification of the funding within ten (10) days of the deposit. The Settlement Fund Account shall be used to make payments to the Charging Parties and Eligible Claimants. Leopalace will have no authority or discretion as to the distribution of the Settlement Amount funds to the Charging Parties or the Eligible Claimants, which is exclusively within the discretion of the EEOC.

B.  Within thirty (30) days of the Effective Date, Leopalace shall hire and appoint a qualified individual or organization ("Claims Administrator"), approved by the EEOC, to oversee the Claims Process. If the Claims Administrator initially appointed thereafter declines to serve or to carry out its duties under this Decree, Leopalace shall have ten (10) business days to notify the EEOC in writing of the need for a replacement Claims Administrator. Leopalace shall pay all costs associated with the selection and retention of the Claims Administrator as well as the performance of the Claims Administrator's duties under Section VIII of this Decree. The Claims Administrator shall cooperate and work with the EEOC to effectuate the Claims Process and the terms of this Decree.

C.  The EEOC will provide the Claims Administrator with the initial Distribution List containing Charging Parties' and Eligible Claimants' current address, the amount to be paid, and the classification of such amounts to be paid. Within 30 days of the EEOC providing the initial Distribution List, the Claims Administrator will send to each Eligible Claimant the model release

provided by the EEOC. Payment is conditioned upon the receipt of the model release from each Eligible Claimant. The model release is attached hereto as **Exhibit A**. Leopalace shall be provided copies of all releases and information regarding payment amount.

D. Any payment to Charging Parties and any Eligible Claimant under the initial Distribution List will be paid as non-wage compensatory damages and the Claims Administrator shall prepare and distribute any 1099 tax reporting form to Charging Parties and any Eligible Claimant, if required by law, and shall make any appropriate report(s) to the Internal Revenue Service and other tax authorities. Within three (3) business days of sending the aforementioned payment(s), the Claims Administrator shall submit a copy of the check (or a copy of the wire transfer), tax reporting forms, and related correspondence to Anna Y. Park, Regional Attorney, U.S. Equal Employment Opportunity Commission, Los Angeles District Office, 255 East Temple Street, 4th Floor, Los Angeles, CA, 90012.

E. Claims Process

1. *List of Potential Claimants*. Within thirty (30) days of the Effective Date, Leopalace shall forward to the EEOC the name, national origin, ethnicity, job titles, positions, passport information, social security numbers, last known mailing address, phone number, email address, dates of employment, annual gross pay, benefits received (including monetary equivalent of such benefits), and any forwarding employment information of each employee who worked for Leopalace (including those brought over to work at Leopalace's Guam location by Leopalace 21 Corporation) at any point between 2015 and the Effective Date ("List of Potential Claimants").

2. *Claims Notice*. Upon notice from the EEOC, the Claims Administrator will send out within 30 days, a Claims Notice, approved by the EEOC, via electronic and U.S. mail to the individuals included on the List of Potential Claimants provided by the EEOC. The Claims Notice shall explain that the EEOC shall determine eligibility and monetary relief amounts after receipt of a Claims Questionnaire. The Claims Notice shall provide phone and email contact information for the Claims Administrator and explain how Potential Claimants can access and submit the Claims Questionnaire. The Claims Administrator will work with the EEOC on the Claims Notice and Claims Questionnaire.

6

3.  *Undeliverable Mailings*.  For Claims Notices returned as undeliverable, within twenty (20) days of the Claims Notice being returned to sender as undeliverable, the Claims Administrator shall conduct database searches using Accurint or a similar system to find the Potential Claimant's most recent contact information, including phone number, email address and mailing address. If the Claims Administrator finds more recent contact information, the Claims Administrator shall resend the Claims Notice to the new address. If the Claims Administrator fails to find a more recent mailing address, the Claims Administrator shall notify the EEOC and describe its efforts to locate such employee(s).

4.  *Website and Claims Questionnaire*.  Within forty-five (45) days of the Effective Date, the Claims Administrator shall establish a website that provides information regarding the Decree, the Claims Process, and how to complete the Claims Questionnaire. The website shall include an embedded Claims Questionnaire, approved by the EEOC. The Claims Questionnaire shall also be available for download by Potential Claimants, as well as in paper form upon request by the EEOC or the Potential Claimant. The website shall include phone, mail and email contact information for the Claims Administrator and the EEOC. The website shall also explain how Potential Claimants can seek assistance in completing the Claims Questionnaire. The Claims Administrator shall provide the EEOC with electronic access to the Claims Questionnaires filed online. The Claims Administrator shall provide the EEOC with an electronic and paper copy of all questionnaires submitted within ten (10) days of receipt.

5.  The EEOC will provide the Claims Administrator with additional Distribution Lists on a rolling basis containing any additional Eligible Claimants' current address, the amount to be paid, and the classification of such amounts to be paid. Within thirty (30) days of the EEOC providing any additional Distribution List, the Claims Administrator shall send a check from the interest-bearing account to any additional Eligible Claimants via mail, or via wire transfers. Within 30 days of the EEOC providing the additional Distribution List, the Claims Administrator will send to each Eligible Claimant the model release provided by the EEOC. Payment is conditioned upon the receipt of the model release from each Eligible Claimant. The model release is attached hereto as **Exhibit A**. Leopalace shall be provided copies of all releases and information

7

regarding payment amount.

6. Any payment to any additional Eligible Claimant under the additional Distribution Lists will be paid as non-wage compensatory damages and the Claims Administrator shall prepare and distribute any 1099 tax reporting form to any additional Eligible Claimant, if required by law, and shall make any appropriate report(s) to the Internal Revenue Service and other tax authorities. Within three (3) business days of sending the aforementioned payment(s), the Claims Administrator shall submit a copy of the check (or a copy of the wire transfer), tax reporting forms, and related correspondence to Anna Y. Park, Regional Attorney, U.S. Equal Employment Opportunity Commission, Los Angeles District Office, 255 East Temple Street, 4th Floor, Los Angeles, CA, 90012.

F. On a monthly basis, the Claims Administrator will inform the EEOC of the status of payment and the number of claims. The Claims Administrator will notify the EEOC monthly of the remaining amount available out of the Settlement Amount and those who have yet to cash their checks or received their wire transfers. The EEOC will have exclusive discretion as to the distribution of remaining funds in the Settlement Amount, and will issue a final Distribution List that identifies the name, mailing address, monetary compensation amount, and monetary compensation characterization, for the final distribution of any money remaining in the Settlement Amount. Within thirty (30) days of the EEOC providing the final Distribution List, the Claims Administrator shall send a check or a wire transfer from the interest-bearing account to the recipients via certified mail, return receipt requested.

G. The Claims Administrator will work with the EEOC to re-issue checks if checks remain uncashed after 120 days.

If any unclaimed monies in the Settlement Fund remain undistributed after exhausting these efforts to locate the Eligible Claimants after issuing a final Distribution List, the EEOC and Defendant will confer to designating any remaining monies to be put into a cy pres fund. The monies to a cy pres fund will be distributed to a non-profit organization that promotes pay equity based upon national origin and/or race issues. The EEOC shall approve the cy pres designee prior to distribution.

8

## IX.

### CLAIMANT SPECIFIC INJUNCTIVE RELIEF

A.  <u>Removal of Documents Related to Discrimination Charges & Discipline and Provision of Neutral Employment References for Claimants</u>

Leopalace shall:

1.  Within thirty (30) days of notification from the EEOC, remove from the Claimants' personnel files any documents regarding or references to, the charges of discrimination filed against Leopalace or Claimants' participation in this Action;

2.  Maintain records of the charges of discrimination separately from Claimants' personnel files to the extent that Leopalace must keep such records in order to effectuate this Decree;

3.  Be enjoined from providing negative references about Claimants, and direct all reference inquiries to a Human Resources representative, who will provide a neutral employment reference, limited to verifying whether Claimants were employed by Leopalace, the last position in which Claimants were employed, and the duration of employment with Leopalace;

4.   Within thirty (30) days of notification from the EEOC, remove from the Claimants' personnel files documents or references that the EEOC deems to be retaliatory or resulting from discrimination. These shall include, but not limited to, documents regarding or references to, discipline, separation from employment, termination, resignation, lay off and dismissal, or negative performance reviews. The EEOC's decision is final, and Leopalace shall comply;

5.  Ensure that Claimants may freely seek re-employment with Leopalace.  Nothing in this Decree shall prevent Claimants from seeking re-employment with Leopalace; and

6.  Provide the EEOC with semi-annual report for the first year from the Effective Date and annual report thereafter for the remaining duration of the Decree by the Monitor of compliance with provisions above.

B.  <u>Re-Instatement</u>

1.  Leopalace will not discriminate or retaliate against Charging Parties or Eligible Claimants who apply for or seek re-instatement with Leopalace.

9

2.  Eligible Claimants may be entitled to re-instatement. The Claims Questionnaire will include an inquiry as to whether the Eligible Claimant is interested in returning to work for Leopalace, including (i) what position(s) they seek; (ii) their availability to start and to work particular days and shifts; and (iii) the rate of pay sought. The Claims Administrator shall notify the EEOC monthly of all Eligible Claimants interested in returning to work for Leopalace. Upon request by the EEOC, Leopalace shall provide the EEOC within twenty (20) days with complete personnel files of all Eligible Claimants interested in returning to work for Leopalace.

3.  The EEOC shall determine whether a Charging Party or an Eligible Claimant is an eligible and qualified candidate for re-instatement (a "Reinstatement Candidate"). To be "eligible and qualified" a Charging Party or an Eligible Claimant must meet the qualifications of the position sought, including any required skills, ability, or availability, and must not have been previously terminated from Leopalace for misconduct, poor work performance, or attendance violations, or abandoned employment. Once the EEOC determines a Reinstatement Candidate to be eligible and qualified, and there is a position available, EEOC shall consider the appropriateness of reinstatement after consultation with the Monitor and Leopalace considering Leopalace's compliance with the consent decree. The EEOC shall also consult the Monitor and Leopalace on the wages, benefits, terms and conditions of employment. Leopalace shall not be required to reinstate a Reinstatement Candidate if no position exists or if another employee has already filled the position. Leopalace shall, during the first year from the Effective Date, send EEOC monthly reports for (i) all open positions for the following thirty (30) days (along with their wages, benefits, terms and conditions of employment), (ii) all filled positions for the previous thirty (30) days (along with their names, hire dates, national origin, passport information, visa type, wages, benefits, terms and conditions of employment), and (iii) the status of employment with Leopalace for Reinstatement Candidates that have been reinstated in the previous thirty (30) days. The Parties will attempt to meet and confer regarding any issues related to reinstatement and the EEOC will use Section VII to resolve any disputes concerning reinstatement.

4.  Leopalace is enjoined from interfering with any Eligible Claimant's ability to seek reemployment.

10

**X.**

**GENERAL INJUNCTIVE RELIEF**

A. Anti-Discrimination

Leopalace, its officers, executives, agents, management (including all supervisory employees), directors, human resources personnel, successors, assigns, and all those in active concert or participation with them or any of them, are hereby enjoined from: (a) engaging in discrimination of wages, benefits, terms and conditions of employment on the basis of national origin, particularly by extending more favorable wages, benefits, terms and conditions of employment to employees of Japanese-origin and denying the same to employees of non-Japanese origin, in violation of Title VII; and/or (b) engaging in or being a party to any action, policy, or practice that is intended or is known to have the effect of discriminating on the basis of any employee's national origin, particularly by extending more favorable wages, benefits, terms and conditions of employment to employees of Japanese-origin and denying the same to employees of non-Japanese origin, in violation of Title VII.

B. Anti-Retaliation

Leopalace, its officers, executives, agents, management (including all supervisory employees), directors, human resources personnel, successors, assigns, and all those in active concert or participation with them or any of them, are hereby enjoined from implementing or permitting any action, policy or practice that subjects any current or former employee (including Claimants) of Leopalace to retaliation, because he or she has in the past, or during the term of this Decree:

1. Opposed any practice made unlawful under Title VII;

2. Filed a charge of discrimination alleging such practice;

3. Testified or participated in any manner in an internal or external investigation or proceeding relating to this case or any claim of a violation of Title VII;

4. Was identified as a Potential Claimant or witness in this Action;

5. Asserted any right under this Decree; or

6. Sought and/or received any relief in accordance with this Decree.

11

## XI.

## SPECIFIC INJUNCTIVE RELIEF

A.  Equal Employment Opportunity Monitor

Within thirty (30) days after the Effective Date, Leopalace shall retain a third-party Equal Employment Opportunity Monitor ("Monitor"), approved by the EEOC, with demonstrated experience in the areas of preventing and combatting discrimination on the basis of national origin. If the Parties are unable to agree on the selection of the Monitor within thirty (30) days after the Effective Date, Leopalace shall choose the Monitor, within forty-five (45) days after the Effective Date, from a list of three names provided by the EEOC, or else the EEOC will select the Monitor. The Monitor shall have access to documents and employees of Leopalace, and shall monitor Leopalace's compliance with Title VII, and the provisions of this Decree. The Monitor will be given access to information, documents, and personnel to carry out his/her duties. Leopalace shall bear all costs associated with the selection and retention of the Monitor and the performance of his/her duties. If the Monitor must be replaced during the duration of the Decree, Leopalace shall propose a new designee subject to EEOC's approval. The Monitor's responsibilities shall include:

1.  Conducting audits/compliance surveys and complaint reviews under Section XI.B, to determine whether national origin discrimination, and/or retaliation exists, particularly to enjoin Leopalace from extending more favorable wages, benefits, terms and conditions of employment to employees of Japanese-origin and denying the same to employees of non-Japanese origin, in violation of Title VII;

2.  Tracking and evaluating all information received by Leopalace regarding alleged national origin discrimination in favor of employees of Japanese-origin, and/or retaliatory conduct, reviewing documents relating to such complaints of national origin discrimination, and/or retaliation, and any documents related to the investigation or resolution of such complaints to ensure that Leopalace is responding to such complaints and conducting a prompt, thorough and impartial investigation;

3.  Assisting Leopalace to ensure that Leopalace's policies and procedures are free from national origin discrimination, like extending more favorable wages, benefits, terms and conditions

12

of employment to employees of Japanese-origin and denying the same to employees of non-Japanese origin, and/or retaliation, and fully comply with Title VII and all terms set forth in the Decree, as described in Section XI.C;

4. Consulting with Leopalace in the creation and implementation of the training curriculum under Section XI.E;

5. Ensuring that Leopalace's trainings are effective, especially with respect to training of executives, directors, managers, supervisors, recruiters, and human resources employees, by attending the Management and Human Resources Training, and providing guidance or feedback if additional training is needed to ensure prompt, effective and impartial complaint investigations;

6. Preparing a semi-annual report in the first year from the Effective Date, and annual reports thereafter for the remaining duration of the Decree, to the EEOC on Leopalace's progress and compliance under this Decree pursuant to Section XI.I;

7. Ensuring that Leopalace's reports required by this Decree are accurately compiled and timely submitted;

8. Monitoring and ensuring the retention and maintenance of any documents or records required by this Decree under Section XI.H;

9. Monitoring and ensuring the distribution of any documents and Notice Posting as required by this Decree;

10. Ensuring that the report referenced in Section IX.A.6. is timely sent to the EEOC;

11. Ensuring compliance with reinstatement provisions and provide reporting as set forth in Section IX.B; and

12. Otherwise ensuring Leopalace's compliance with Section XI of this Decree.

B. Audits, Surveys and Compliance Reviews

1. *Wages/Benefits/Terms and Conditions of Employment Audits*

For the first year of the Consent Decree from the Effective Date, semi-annually, and every year thereafter, annually, Leopalace shall provide the EEOC and the Monitor with a list of all newly hired employees (whether directly employed by Leopalace and employees brought over from Leopalace 21 Corporation) sent to work at Leopalace's Guam location under E-1, E-2 and

L-1 visas. The list shall include the name, national origin, ethnicity, job titles, positions, last known mailing address, phone number, email address, dates of employment, visa type, annual gross pay, benefits received (including monetary equivalent of such benefits). Using this list, the Monitor shall, for the first year of the Consent Decree from the Effective Date, semi-annually and every year thereafter, annually, audit wages, benefits, terms and conditions of newly hired employees under E-1, E-2 and L-1 visas working at Leopalace's Guam location (whether directly employed by Leopalace and will also include individuals from Leopalace 21 Corporation) against non-Japanese employees by conducting an extensive review of their entire personnel files, visa application documents, employment contracts, data and records of wages, benefits, terms and conditions of employments, to evaluate whether justification for extending more favorable wages, benefits, terms and conditions to newly hired employees of Japanese-origin and denying the same to employees of non-Japanese origin fully complies with Title VII. In conducting these audits, the Monitor shall audit those individuals newly hired and brought to work at Leopalace's Guam location under E-1, E-2 and L-1 visas to ensure they are in compliance with Title VII and determine if any differential in wages, benefits, terms and conditions of employment are consistent with Title VII. "Newly hired" for purposes of this section means an individual hired on or after the Effective Date.

The Monitor shall have access to all records relating to wages, benefits, terms and conditions of employment belonging to Leopalace, for purposes of compliance with this Consent Decree, and shall have access to Leopalace's and/or Leopalace 21 Corporation's employees, if necessary, to conduct interviews. Specifically, the applicable records and/or interviews for Leopalace 21 Corporation are only those that relate to individuals hired and brought to work at Leopalace's Guam location under E-1, E-2 and L-1 visas.

2. *EEO Compliance Survey*

Within ninety (90) days of the Effective Date, the Monitor shall conduct a semi-annual survey and thereafter an annual survey following the first year from the Effective Date, to ensure Leopalace is not extending more favorable wages, benefits, terms and conditions of employment to employees of Japanese-origin and denying the same to employees of non-Japanese origin, in

14

violation of Title VII. The survey should also encourage Leopalace's employees to report national origin discrimination, and/or retaliation.

The Monitor shall send all employees at Leopalace a survey and ensure compliance with policy prohibiting national origin discrimination and retaliation.

To seek their input, the surveys will be sent to all Leopalace's employees, without their advance knowledge of the survey. The survey shall inquire into:

a. to determine whether there are issues of retaliation, and/or national origin discrimination in favor of employees of Japanese-origin with regards to wages, benefits, terms and conditions of employment; and

b. whether corrective and preventative measures are being carried out to address any issues of retaliation, and/or national origin discrimination in favor of employees of Japanese-origin with regards to wages, benefits, terms and conditions of employment.

3. *Review of National Origin Discrimination and/or Retaliation Complaints*

Within ninety (90) days of the Effective Date, the Monitor shall conduct a semi-annual review and thereafter an annual review following the first year from the Effective Date of all complaints and the investigative actions taken with respect to those complaints where the allegations involve national origin discrimination in favor of employees of Japanese-origin with regards to wages, benefits, terms and conditions of employment, and/or retaliation. The Monitor shall assess whether Leopalace has responded to these complaints by conducting a prompt, thorough, and impartial investigation. The Monitor shall ensure proper identification of complaints to assess if Leopalace conducted investigations promptly, thoroughly, and impartially, and took prompt, preventative and corrective actions as required under Title VII and report back to the EEOC in its semi-annual or annual report concerning compliance with this section.

4. *Audit Reports*

The results of all audits/compliance surveys and complaint reviews shall be submitted to the EEOC in a semi-annual report for the first year from the Effective Date and thereafter an annual report for the following years. The Monitor's reports shall include assessments and recommendations of Leopalace's compliance with the provisions of the Decree in which the

15

Monitor has oversight or involvement pursuant to the Decree. In particular, the Monitor shall ensure that wages, benefits, and terms and conditions of employment of non-Japanese and Japanese employees comply with Title VII. Results of the audits and surveys shall be reported to the EEOC.

C. Policies and Procedures

1. *Revision of Policies and Procedures*

Within thirty (30) days from the selection of the Monitor, the Monitor and Leopalace shall conduct a review of and revise its current policies and procedures ("Policies and Procedures") that explain, define, and prohibit national origin/race discrimination, to ensure that disparity in wages, benefits, and benefits, terms and conditions in favor of one group over another is prohibited as required under Title VII. The Policies and Procedures should also address that retaliation under Title VII is prohibited with mechanisms to report. Within forty-five (45) days from the selection of the Monitor, Leopalace shall provide the EEOC with a copy of its revised Policies and Procedures. At all times, the revised Policies and Procedures shall, at a minimum, include:

a. a strong and clear commitment to a workplace free from national origin discrimination, and retaliation;

b. a clear and comprehensive description of national origin discrimination, and retaliation, including a discussion of how Leopalace is enjoined from extending more favorable wages, benefits, terms and conditions of employment to employees of Japanese-origin and denying the same to employees of non-Japanese origin, in violation of Title VII;

c. an assurance that Leopalace shall hold all employees, including its officers, executives, directors, managers (including all supervisory employees), recruiters, human resources employees, accountable for engaging in conduct prohibited under Title VII or this Decree, including but not limited to national origin discrimination, and/or retaliation, and for failing to take prompt appropriate action upon receiving information regarding national origin discrimination, and/or retaliation in the workplace, and a description of the consequences for those that fail to adhere to reporting steps;

d.   an assurance that persons who complain about discrimination they experienced or witnessed and persons who provide information relating to such complaints will not be subject to retaliation;

e.   a statement that the revised Policies and Procedures apply to all persons, including its officers, executives, directors, managers (including all supervisory employees), recruiters, employees, third parties, and Human Resources employees; and

f.   an Internal Complaint Procedure, as described in Section XI.D.

Leopalace and the Monitor shall submit to the EEOC any revisions to Policies and Procedures to prevent and correct national origin discrimination, and/or retaliation sixty (60) days prior to any proposed change.

2. *Distribution of Revised Policies and Procedures*

If the EEOC does not provide comment within thirty (30) days of receipt, Leopalace shall distribute the revised Policies and Procedures to all employees, within one hundred and twenty (120) days of the Effective Date by (a) posting copies in clearly visible areas within Leopalace's offices; and (b) providing copies to each current employee by sending an electronic copy to their work email address. For employees hired after the Effective Date, Leopalace shall provide a paper and electronic copy of the revised Policies and Procedures within ten (10) days of their hire date, during the onboarding process. Each employee shall sign a form acknowledging receipt of the revised Policies and Procedures. The revised Policies and Procedures shall be disseminated via electronic mail on an annual basis. On a semi-annual basis for the first year from the Effective Date and annually thereafter, for the term of the Decree, Leopalace shall provide a statement confirming distribution of the revised Policies and Procedures to all employees.

D.   Internal Complaint Procedure

The Internal Complaint Procedure shall incorporate the following elements:

1.   A clearly described process for submitting complaints of national origin discrimination, and/or retaliation that includes multiple avenues for employees to lodge complaints of discrimination, and/or retaliation verbally or in writing, including (a) a direct toll-free phone number and email address for Leopalace's Human Resources Department; (b) an online complaint

17

process that Leopalace and the Monitor will track; and (c) notifying any of Leopalace's recruiter, manager, or Human Resources representative;

2. A clearly described process for a prompt, thorough, and impartial investigation of all complaints from employees including (a) interviewing all relevant witnesses, including the complainant and employees of Leopalace, (b) review of all relevant evidence; (c) creation of written investigative reports that document all investigatory steps, any findings and conclusions, and any actions taken, and including all complaints, notes of interviews and other relevant evidence;

3. Resolution of all complaints of discrimination, and retaliation, by Leopalace, in a timely and effective manner not to exceed ninety (90) days;

4. A clear explanation of Leopalace's duty to conduct a follow-up meeting with the employee to evaluate the continued effectiveness of any step taken by Leopalace to remedy any national origin discrimination and/or retaliation; and

5. An explanation that the internal complaint procedure does not replace the right of any employee to file a charge or complaint of discrimination or retaliation under federal law, and that filing an internal complaint does not relieve the complainant of meeting any deadline for filing a charge of discrimination. The procedures shall provide contact information for EEOC and state and local Fair Employment Practice (FEP) agencies.

The Monitor shall assess the effectiveness of the internal complaint procedure by monitoring complaints and analyzing any investigations regarding national origin discrimination, and/or retaliation and reporting back to the EEOC in its semi-annual or annual report.

E. Training

1. *Scope of Training Requirements.*

Unless otherwise noted, Leopalace shall train all of its employees.

2. *All Trainings.*

a. All trainings described in XI.E. Paragraphs 3 through 6 shall be mandatory for the duration of the Decree. All persons shall verify their attendance in writing. Leopalace shall maintain copies of training sign-in sheets for the duration of the Decree.

18

b. All trainings provided pursuant to this Decree shall be live, in person, and interactive, unless otherwise indicated. If the Monitor is located off-island, the trainings may be either in-person or virtual at the discretion of the Monitor with an interactive component. Leopalace shall work with the Monitor to develop the training curriculum. Examples shall be given of prohibited conduct. Leopalace shall leave time for question and answer at the conclusion of the training. All trainings and training materials shall be provided in English.

c. Within sixty (60) days after the Effective Date, Leopalace shall submit to the EEOC and the Monitor the identity and qualifications of the qualified third party trainer selected, which can be the Monitor, a description of the trainings to be provided along with the training materials, and an outline of the training curriculum. Upon receipt, the EEOC and/or the Monitor may provide comment within thirty (30) days regarding any necessary revisions to the training.

d. The trainings in Sections XI.E.4. XI.E.5 and XI.E.6 shall occur within one hundred twenty (120) days of the Effective Date, and thereafter on an annual basis. When scheduling each live training, Leopalace shall also schedule an alternative training session within thirty (30) days of the initial training that is either (a) live and interactive; or (b) a video recording of the live training plus an interactive component. Within thirty (30) days of the hire date of any employee hired after the required training, Leopalace shall provide an alternative training session that is either (a) live and interactive; or (b) a video recording of the live training with an interactive component. All employees will be paid their normal rate of pay during the trainings.

e. Leopalace shall give the EEOC and the Monitor a minimum of twenty (20) business days advance written notice of the date, time and location of each training provided pursuant to this Decree. An EEOC representative or the Monitor may attend any such training upon request by the EEOC or the Monitor. The EEOC and the Monitor may also review training materials proposed and/or used upon request.

3. *New Employee Orientation*

Leopalace shall provide an oral orientation ("Orientation") to all new employees within ten (10) days of their hire date. The Orientation shall emphasize that (a) Leopalace is committed to ensuring that the workplaces are free from discrimination and retaliation, especially based on

19

national origin; (b) that Leopalace takes seriously all allegations of discrimination and retaliation and encourages employees to notify Leopalace's Human Resources Department when they become aware of potentially discriminatory, and/or retaliatory conduct; and (c) that Leopalace will take prompt, preventative and corrective action in response to discrimination, and retaliation in the workplace. The Orientation shall briefly review Leopalace's complaint procedures, and explain where employees can find additional information, including the appropriate contact information.

4. *Compliance Training for All Employees*

All employees of Leopalace, who are not Leopalace's officers, executives, directors, managers, supervisors, and other personnel with authority to recruit, hire, or determine wages, benefits, terms and conditions of employment, shall be required to attend a Compliance Training lasting at least two (2) hours in duration. The training under this section shall cover:

a. the role and purpose of Title VII, including what constitutes unlawful national origin discrimination, particularly with regards to wages, benefits, terms and conditions of employment, and retaliation;

b. the rights and responsibilities under Title VII and this Decree of employees if they experience, observe, or become aware of conduct that they believe may be discriminatory, or retaliatory;

c. the revised Policies and Procedures as outlined in Section XI.C and the Internal Complaint Procedure in Section XI.D.; and

d. The training shall emphasize Leopalace's commitment to ensuring a workplace free from national origin discrimination, particularly by extending more favorable wages, benefits, terms and conditions of employment to employees of Japanese-origin and denying the same to employees of non-Japanese origin, in violation of Title VII, and encourages employees that experience or witness discriminatory and/or retaliatory conduct to report it. The training shall also emphasize the consequences for employees that engage in prohibited conduct and for managers, recruiters, and human resources employees that fail to notify Leopalace upon becoming aware of conduct that may be discriminatory or retaliatory.

20

Before concluding the training, Leopalace shall provide direct contact information for Leopalace's Human Resources Department, and for the online complaint process.

5. *Management Training*

All of Leopalace's officers, executives, directors, managers, supervisors, and other personnel with authority to recruit, hire, or determine wages, benefits, terms and conditions of employment shall attend a Management Training of at least two (2) hours in duration that includes ways in which disparate wages, benefits, terms and conditions of employment on the basis of national origin can occur, particularly by extending more favorable wages, benefits, terms and conditions of employment to employees of Japanese-origin and denying the same to employees of non-Japanese origin, in violation of Title VII, and compliance with this Decree. The trainings shall be live, in-person and interactive. If the Monitor is located off-island, the trainings may be either in-person or virtual with an interactive component at the discretion of the Monitor. The Monitor shall attend the Management Trainings in-person or virtually, which shall address the following:

a. Title VII's prohibitions against national origin discrimination and retaliation;

b. Examples of conduct that alone or together may rise to the level of unlawful national origin discrimination, particularly with regards to wages, benefits, terms and conditions of employment, and/or retaliation;

c. Consequences for its officers, executives, directors, managers, supervisors that fail to follow or enforce Leopalace's Policies and Procedures;

d. Consequences for its officers, executives, directors, managers, supervisors, and employees that engage in conduct that may be considered national origin discrimination, particularly with regards to wages, benefits, terms and conditions of employment, and/or retaliation; and

e. Leopalace's Internal Complaint Procedure, and how to respond to, investigate, and resolve complaints of discrimination, or retaliation, including: (1) investigative techniques, and the duty to impartially interview all relevant witnesses and review all documents (e.g. pay data and benefits information), where applicable; (2) the duty to report up the chain of command potential discrimination and retaliation; (3) the need to thoroughly document discrimination complaint

21

investigations, including taking and retaining notes of interviews conducted and documents reviewed; (4) types of preventative and corrective actions; (5) post-investigation procedures for monitoring the work environment; and (6) the duty to monitor and audit any post-complaint or investigation personnel actions regarding complainants and witnesses to ensure absence of retaliation.

6. *Human Resources Training*

All of Leopalace's human resources, finance and accounting employees, and other personnel with authority to recruit, hire, or determine wages, benefits, terms and conditions of employment shall attend a Human Resources Training of at least two (2) hours in duration that includes ways in which disparate wages, benefits, terms and conditions of employment on the basis of national origin can occur, particularly by extending more favorable wages, benefits, terms and conditions of employment to employees of Japanese-origin and denying the same to employees of non-Japanese origin, in violation of Title VII, and compliance with this Decree. The trainings shall be live, in person and interactive. If the Monitor is located off-island, the trainings may be either in-person or virtual with an interactive component at the discretion of the Monitor. The Monitor shall attend the Human Resources Trainings in-person or virtually, which shall address the following:

a. Title VII's prohibitions against national origin discrimination, and retaliation;

b. Examples of conduct that alone or together may rise to the level of unlawful national origin discrimination, particularly with regards to wages, benefits, terms and conditions of employment, and/or retaliation; and

c. Leopalace's Internal Complaint Procedure, and how to respond to, investigate, and resolve complaints of discrimination, or retaliation, including: (1) investigative techniques, and the duty to impartially interview all relevant witnesses and review all documents (e.g. pay data and benefits information), where applicable; (2) the duty to report up the chain of command potential discrimination and retaliation; (3) the need to thoroughly document discrimination complaint investigations, including taking and retaining notes of interviews conducted and documents reviewed; (4) types of preventative and corrective actions; (5) post-investigation procedures for

22

monitoring the work environment; and (6) the duty to monitor and audit any post-complaint or investigation personnel actions regarding complainants and witnesses to ensure absence of retaliation.

7.  *Verification of Training*

All persons required to attend such training shall verify their attendance in writing. Semi-annually for the first year from the Effective Date and annually thereafter, Leopalace shall produce to the EEOC and to the Monitor documents verifying the occurrence of all training sessions conducted as required under this Decree, including the written training materials used, a description of the training provided, a list of the individuals who conducted the training, and a list of the names and job titles of attendees at each training session.

F.  Posting of Notice

Within ten (10) business days after the Effective Date and throughout the term of this Decree, Leopalace shall post laminated copies of the Notice (in English) attached as Exhibit B in clearly visible locations frequented by employees and Leopalace's offices.

G.  Online Complaint Process

Within thirty (30) days of the Effective Date, Leopalace will work with the Monitor create an online complaint process ("Online Complaint Process") to report complaints of discrimination, and/or retaliation. Leopalace shall work with the Monitor to ensure effective dissemination of information about the Online Complaint Process, in writing and electronically, to all employees. All employees must be informed that the Online Complaint Process is for handling EEO complaints including discrimination, harassment, and/or retaliation.  Leopalace with the Monitor shall ensure that all Online Complaint Process inquiries and response times are tracked and handled by Leopalace. The Monitor and Leopalace will create protocols in handling complaints including responding promptly to the employee and the complaint procedure outlined in this Decree. The Monitor shall review and evaluate Leopalace's effectiveness and responsiveness to an Online Complaint Process complaint.

Leopalace shall disseminate the information regarding the Online Complaint Process to all employees within thirty-five (35) days of the Effective Date by sending the information, in writing

23

and electronically, to their work email address. Leopalace shall provide the same information to employees hired after the Effective Date within five (5) days of their hiring date, during the onboarding process. Leopalace shall have each new employee sign a form acknowledging receipt of the information.

H. Recordkeeping

Leopalace shall maintain the following records:

1. All communications with the Monitor, Claims Administrator and the EEOC;

2. All documents related to any complaint of national origin discrimination, and/or retaliation, including documents and records relating to all investigations or resolutions of any complaints and the identities of all witnesses identified by the complainant and/or through Leopalace's investigation, and all communications related to the complaint, the investigation, or the resolution;

3. All personnel and performance related documents related to any person that files a complaint or otherwise reports national origin discrimination, and/or retaliation;

4. All documents generated in connection with the audits/compliance surveys and compliance reviews conducted by the Monitor under Section XI.B

5. All forms acknowledging employees' receipt of Leopalace's revised Policies and Procedures under Section XI.C;

6. All documents verifying the occurrence of all training sessions and names and positions of all attendees, under Section XI.E;

7. All documents generated in connection with the monitoring, counseling and disciplining of employees whom Leopalace determined to have engaged in behavior that may be discriminatory, and/or retaliatory;

8. All documents related to compliance with the terms of the Decree; and

9. All documents generated in connection with Leopalace's Online Complaint Process per Section XI.G.

Leopalace shall make the aforementioned records available to the EEOC within fourteen (14) business days following a written request by the EEOC.

I.   <u>Reporting</u>

1.   *Semi-Annual and Annual Report*

Unless otherwise noted, semi-annually for the first year from the Effective Date and annually thereafter, Leopalace, through its Monitor, shall provide reports containing:

a.   A complete employee list for all employees, including job title of employees;

b.   A complete list of all newly hired or newly placed employees (whether directly employed by Leopalace and/or Leopalace 21 Corporation) sent to work at Leopalace's Guam location under E-1, E-2 and L-1 visas, which shall include the name, national origin, ethnicity, job titles, positions, passport information, social security number, last known mailing address, phone number, email address, dates of employment, visa type, annual gross pay, benefits received (including monetary equivalent of such benefits), and any forwarding employment information.

c.   The attendance lists of all attendees for the training sessions required under this Decree that took place since the previous report;

d.   A list of all management or supervisory personnel with responsibility for receiving complaints of alleged or potential national origin discrimination, including name, title, department and date of hire;

e.   A statement confirming that Leopalace has distributed the revised Policies and Procedures to all employees;

f.   Documents verifying the occurrence of all training sessions, including the written materials used, a description of the training, a list of the trainers, and a list of the attendees;

g.   A description of all national origin discrimination, and/or retaliation complaints made, investigated, pending or resolved in the last 180 days for the first year and 365 days for subsequent years, including the names of the complainants; the nature of the complaint; the names of the alleged perpetrators of discrimination, or retaliation; the dates of the alleged discrimination or retaliation; a brief summary of how each complaint was resolved; and the identity of each of Leopalace's employee(s) who investigated or resolved each complaint and the identity and most recent contact information for each witness identified by the complainant and/or investigation. If no results have been reached as of the time of the report, the result shall be included in the next

25

report;

h. A statement confirming that the required notices pertaining to this Decree, the revised Policies and Procedures, and the Online Complaint Process have been posted/sent;

i. A statement confirming that all employees have been promptly reinstated in accordance with Section IX. B above, except that the reports discussed at Section IX.B. 3. shall only be provided monthly during the first year from the Effective Date;

j. A report referenced in Section IX. A. 6. that documents relating to discriminatory charges and discipline have been removed from personnel files;

k. The status of Leopalace's compliance with the terms of the Decree; and

l. Whether any revisions of Leopalace's policies and procedures regarding national origin discrimination, and retaliation took place since the preceding report, including a copy of the revised policies or procedures.

The Report shall also include the Monitor's report to the EEOC and Leopalace that describes all work performed pursuant to this Decree and provides the Monitor's feedback and recommendations going forward. The report shall include the Monitor's evaluation and recommendations following the audits/compliance surveys and compliance reviews, the trainings under Section XI.E, and review of Leopalace's implementation of the Internal Complaint Procedure under Sections XI.D. Most importantly, the Monitor's report shall provide feedback regarding Leopalace's good faith efforts to comply with this Decree and Title VII, as well as the Monitor's assurance that after conducting the audits/compliance surveys and compliance reviews and reviewing Leopalace's overall compliance with this Decree and Title VII, there is no disparity in wages, benefits, terms and conditions of employment between the employees of Japanese-origin and those other employees of non-Japanese origin working at Leopalace's Guam location in violation of Title VII. The Monitor's report shall cover all the Monitor's responsibilities, as detailed in Section XI.A.

## XII.

## COSTS OF ADMINISTRATION AND IMPLEMENTATION OF CONSENT DECREE

Leopalace shall bear all costs associated with its administration and implementation of its

26

obligations under this Consent Decree.

## XIII.

## COSTS AND ATTORNEYS' FEES

Each party shall bear its own costs of suit and attorneys' fees.

## XIV.

## MISCELLANEOUS PROVISIONS

A. During the term of this Decree, Leopalace shall provide any potential successor-in-interest with a copy of this Decree within a reasonable time of not less than thirty (30) days prior to the execution of any agreement for acquisition or assumption of control of any or all of Leopalace's locations, or any other material change in corporate structure, and shall simultaneously inform the EEOC of the same.

B. During the term of this Consent Decree, Leopalace shall assure that each of its officers, managers and supervisors is aware of any term(s) of this Decree which may be related to his/her job duties.

C. Unless otherwise stated, all notices, reports, and correspondence required under this Decree shall be delivered electronically to the attention of Anna Y. Park, to lado.legal@eeoc.gov and anna.park@eeoc.gov.

D. The Parties agree to entry of this Decree and judgment subject to final approval by the Court.

All parties, through the undersigned, respectfully apply for and consent to this entry of this Consent Decree Order.

## XV.

## EEOC'S REPORTING REQUIREMENTS UNDER IRC SECTIONS 162(f) AND 6050X

A. The EEOC may be required to report the fact of this settlement to the IRS under Section 162(f) and 6050X of the Internal Revenue Code which allow for certain payments by employers to be deducted from the employer's taxes. If the EEOC is required to do so, the EEOC will provide the employer with a copy of the 1098-F form that it will provide to the Internal Revenue Service (IRS).

27

1.  Leopalace's EIN is: 94-3057951.

The individual to whom the EEOC should mail a copy of the form 1098-F, if the EEOC is required to issue one is:

> Name: Gerald "Jake" Woo

> Physical Address: 221 Lake View Drive, Yona, Guam 96915

2.  The EEOC has made no representations regarding whether the amount paid pursuant to this settlement qualifies for the deduction under the Internal Revenue Code.

3.  The provision of the Form 1098-F by the EEOC does not mean that the requirements to claim a deduction under the Internal Revenue Code have been met.

4.  Any decision about a deduction pursuant to the Internal Revenue Code will be made solely by the IRS with no input from the EEOC.

5.  The parties are not acting in reliance on any representations made by the EEOC regarding whether the amounts paid pursuant to this agreement qualify for a deduction under the Internal Revenue Code.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

Date: ___02/10/25___

By: _____
Anna Y. Park
Attorney for Plaintiff EEOC

CALVO JACOB & PANGELINAN LLP

Date: __January 30, 2025__

By: _____
Genevieve P. Rapadas
Attorney for LEOPALACE GUAM
CORPORATION DBA LEOPALACE
RESORT

**[~~PROPOSED~~] ORDER**

The provisions of the foregoing Consent Decree are fair, reasonable, and adequate. The Consent Decree is hereby approved and compliance with all provisions thereof is HEREBY ORDERED. The Court hereby retains jurisdiction over this Consent Decree until its expiration.

IT IS SO ORDERED.

Date: Feb. 18, 2025

_____
The Honorable ~~Frances Tydingco-Gatewood~~ Ramona V. Manglona
United States District Judge

29

# EXHIBIT A

**<u>RELEASE</u>**

In consideration for the $_____ paid to me by Leopalace Guam Corporation dba Leopalace Resort ("Defendant"), in connection with the resolution of *EEOC v. Leopalace Guam Corporation dba Leopalace Resort* (Case No. 1:25-cv-00004, United States District Court, Territory of Guam), I waive my right to recover for any claims of less favorable wages, benefits, terms and conditions of employment based on national origin (non-Japanese) and retaliation, arising under Title VII of the Civil Rights Act of 1964, that I had or may have had against Defendant prior to the date of this release and that were included in the claims alleged in EEOC's complaint in *EEOC v. Leopalace Guam Corporation dba Leopalace Resort*.


Date: _____     Signature:_____

                                      Name: _____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

## <u>Notice of Entry of Consent Decree</u>

This Notice is posted pursuant to a Consent Decree entered by the federal court in *U.S. Equal Employment Opportunity Commission v. Leopalace Guam Corporation dba Leopalace Resort* ("Leopalace"), Case No. 1:25-cv-00004, settling a lawsuit filed by the U.S. Equal Employment Opportunity Commission ("EEOC").

In its suit, the EEOC alleged Leopalace unlawfully discriminated against a class of non-Japanese employees by subjecting them to less favorable wages, benefits, and terms and conditions of employment compared to their equivalent or subordinate Japanese employees because of their national origin (non-Japanese), in violation of Title VII of the Civil Rights Act of 1964, as amended. Leopalace denies the allegations but as a condition for resolution of this matter has agreed to post this notice. Leopalace does so without any admission of wrongdoing or violations of the law. In addition to monetary relief, Leopalace has agreed to implement injunctive relief remedies.

The three year Consent Decree sets forth the following:

1) a claims process to provide monetary relief to a class of individuals identified by the EEOC subjected to national origin discrimination pay and benefits and/or retaliation:
2) reinstatement for individuals eligible under the Consent Decree;
3) revise and disseminate policies and procedures to prohibit and prevent national origin discrimination and retaliation;
4) hire a third party EEO monitor who will monitor compliance with the Decree;
5) conduct training of all of its employees including managers and human resources employees;
6) conduct periodic audits on wages, benefits, terms and conditions of employment; and
7) report to the EEOC on compliance under this Decree.

Leopalace is committed to complying with federal anti-discrimination and anti-retaliation laws in all respects. It will not tolerate discrimination and will not tolerate retaliation against any employee because of the filing of a charge of discrimination, giving testimony or assistance, or participation in any manner in any investigation.

The EEOC enforces federal laws against discrimination in employment regarding disability, race, color, religion, national origin, sex, pregnancy, and age. If you believe you have been discriminated against, you may contact the EEOC at:

**U.S. Equal Employment Opportunity Commission**
**300 Ala Moana Boulevard, Room 4-257**
**Honolulu, Hawaii 96850**
**Telephone: 1-808-800-2350**

The EEOC charges no fees and can speak languages other than English.

## <u>THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED</u>

This Notice must remain posted for 3 years from the effective date of the Consent Decree unless such Consent Decree is terminated earlier and must not be altered, defaced or covered by any other material.